OPINION
On April 5, 2000, Michael A. Fisher was indicted on a charge of felonious assault with a gun specification. He entered a plea of "not guilty" at arraignment and counsel was appointed to represent him. The case was scheduled for trial on several occasions and finally proceeded to a jury trial on March 14, 2001.
The jury found Mr. Fisher guilty of the charge and a sentencing hearing was conducted on May 5, 2001. The trial judge sentenced him to seven years of incarceration on the felonious assault charge and an additional three years of incarceration for the use of a firearm.
New counsel has been appointed to represent Michael Fisher (hereinafter "appellant") on appeal. Counsel has assigned four errors for our consideration:
Assignment of Error One
 THE COURT ERRED WHEN IT DECLINED TO CHARGE THE JURY AS TO THE LESSER INCLUDED OFFENSE OF AGGRAVATED ASSAULT ALONG WITH THE "DEFENSE OF ANOTHER" AS REQUESTED BY THE DEFENSE.
Assignment of Error Two
 THE COURT ERRED IN ALLOWING JURORS TO SUBMIT QUESTIONS TO WITNESSES, THUS COMPROMISING THEIR IMPARTIALITY AND THEREBY DENYING DEFENDANT HIS RIGHT TO A FAIR TRIAL.
Assignment of Error Three
 THE FAILURE OF DEFENSE COUNSEL TO OBJECT TO THE ABSENCE OF A LIMITING INSTRUCTION AS TO THE JURY'S USE OF PRIOR ACTS EVIDENCE AMOUNTED TO INEFFECTIVE ASSISTANCE OF COUNSEL AND DENIED DEFENDANT OF A FAIR TRIAL.
Assignment of Error Four
 THE COURT ERRED IN REFUSING TO ALLOW THE DEFENSE TO IMPEACH THE STATE'S WITNESS BY USE OF EVIDENCE OF A PENDING INDICTMENT AND PROBATION STATUS TO SHOW BIAS AND INTEREST IN THE CASE.
Addressing the second assignment of error first, counsel asserts that reversible error occurred when the trial judge allowed members of the jury to submit questions they wished to have answered by witnesses. The questions were submitted in writing to the judge and then were reviewed by the judge and the attorneys trying the case to see if the questions were appropriate.
Counsel, on appeal, does not suggest that any of the relatively few questions asked elicited information which was irrelevant or prejudicial. Instead, counsel argues generally that the change of role of the jurors from silent witnesses of the trial to persons who can indirectly interact with the witnesses somehow harms the factfinding process. Thus, we are essentially invited to find the practice to constitute plain error, or "inherently prejudicial," as did the Hamilton County Court of Appeals in State v. Gilden (June 15, 2001), No. C-000276, unreported.
The state responds with a concession that "[g]enerally, the practice is discouraged because jurors are not familiar with the rules of evidence." (Brief at 4.) However, the state contends that this practice, standing alone, is not necessarily prejudicial to a criminal defendant. Thus, the state urges us to follow the majority of Ohio courts which have applied an abuse of discretion standard to the practice.
As noted by the First Appellate District in Gilden, the Supreme Court of Ohio has not yet directly addressed this issue. Notwithstanding the ultimate decision in Gilden which unequivocally disallows the practice in its entirety, the Gilden opinion does preface its discussion with the acknowledgement that its holding is not in accord with Ohio's courts which have addressed the issue:
 All of the appellate districts that have addressed it have held that the decision whether to allow questions by the jury lies within the trial court's discretion and should not be reversed absent a showing of prejudice. * * * State v. Wayt (1992), 83 Ohio App.3d 848, 857-858
* * *; State v. Sheppard (1955), 100 Ohio App. 345, 390
* * * affirmed on other grounds (1956), 165 Ohio St. 293
* * *; State v. Cobb (July 24, 2000), Seneca App. No. 13-2000-07, unreported; Logan v. Quillen (Oct. 27, 1995), Hocking App. No. 94CA26, unreported; State v. Mascarella (July 6, 1995), Tuscarawas App. No. 94AP100075, unreported; State v. Sexton (Nov. 24, 1982), Clark App. No. 1689, unreported; State v. Ernst (Oct. 29, 1982), Sandusky App. No. S-82-7, unreported. * * *
Id. at 1-2. After citing this litany of the cases with which it ultimately conflicts, the Gilden opinion further notes: "The federal courts, as well as a majority of other states, are in accord with these Ohio courts." Id. at 2.
To the extent that assuming an active role encourages a jury to stay alert and pay attention to the proceedings, allowing jurors to submit questions can be viewed as positive. If, on the other hand, a juror begins paying more attention to the process of devising and asking questions than to focusing on the evidence being presented, allowing that juror to submit questions can be a negative. Such a "negative" has not been demonstrated here.
We concur with the appellate courts cited above in holding that the practice of allowing jurors to submit questions does not amount to plain error. Instead, cases should be carefully examined to ascertain whether there was an abuse of discretion in the process.
Based upon the record before us, no prejudice has been demonstrated.
The second assignment of error is overruled.
Turning next to appellant's fourth assignment of error, counsel suggests that prejudicial error occurred when the trial court limited the scope of the cross-examination of Keith Wilson, the man who was shot by appellant.
No serious doubt exists that appellant shot Keith Wilson. The case was tried on a defense theory that appellant shot in self-defense or in the defense of a third man, Carl Boehner.
Prior to trial, the state of Ohio asked the trial court to limit questions of Keith Wilson on the topic of criminal charges which were pending against Mr. Wilson. Trial counsel for appellant indicated that she had no intention of trying to impeach Mr. Wilson based upon charges which had only been indicted. As a result, the trial judge sustained the motion in limine.
When the trial resumed the following week, counsel for the state of Ohio asked that defense counsel be prevented from questioning Mr. Wilson about a charge Wilson was convicted of while he was in the military in 1989. Mr. Wilson had been sentenced to thirteen months of incarceration as a result of a conviction for drug-related offenses and had been discharged from the military as a result. Because the time between the trial date for appellant's felonious assault charge and the end of the proceedings resulting from Keith Wilson's military conviction could not be readily determined, the trial judge deferred ruling upon this issue.
Next, counsel for the state of Ohio asserted that he anticipated a general attack on the character of Mr. Wilson. Counsel for appellant promised to abide by the rules of evidence while conducting a vigorous and thorough cross-examination. The trial court could not rule on this issue without knowing the actual questions to be asked.
Keith Wilson was the second witness to testify at trial. At that time, the permissible scope of cross-examination was revisited. A voir dire of Mr. Wilson was conducted outside the presence of the jury to determine the facts surrounding his criminal conviction while he was in the military. More than ten years had elapsed since the end of the military proceedings and appellant's trial. As a result, the trial court applied Evid.R. 609 and barred inquiry about the conviction.
When Keith Wilson testified in front of the jury, he acknowledged that he had stopped the vehicle being driven by his girlfriend when he saw Carl Boehner, a friend of appellant's. Wilson was angry with Boehner because Boehner had handed a gun to appellant during a confrontation between Wilson and appellant a few days earlier. The gun apparently had been shot at Wilson five times as Wilson and his girlfriend were leaving the confrontation.
On the day Mr. Wilson was shot by appellant, Wilson had gotten out of the car in which he was riding and struck Boehner in the eye, knocking Boehner to the ground. Wilson testified that he (Wilson) then yelled into the apartment where appellant was located, following which appellant stepped outside and shot him (Wilson) five times. Wilson denied having a gun with him at the time he was shot.
The prosecution elicited a partial criminal record from Mr. Wilson, including convictions for retail fraud in Michigan in 1992 and aggravated assault in Franklin County, Ohio in 1999. Mr. Wilson acknowledged still being on probation on the aggravated assault charge.
Before beginning cross-examination, counsel for appellant requested permission from the trial judge to inquire about the pending indictment for rape, kidnapping, felonious assault and robbery for which Mr. Wilson was then being held in jail. Part of counsel's argument was that Mr. Wilson was in a very precarious position because of his being on probation and, as a result, Wilson was fashioning his testimony to help himself avoid additional incarceration. Mr. Wilson was on probation with the same trial judge who was trying appellant's case and who would be expected to address the merits and/or sentences for Wilson's new felony charges. Also, the same prosecuting attorney's office would be handling the prosecution of Mr. Wilson's new felony charges.
The trial court maintained its prior ruling barring use of the indictment in cross-examination.
On cross-examination, Mr. Wilson acknowledged having a problem with alcohol use and drug abuse. He also admitted having been in fights while on probation. He admitted lying to police about striking Mr. Boehner. Mr. Wilson further admitted trying to avoid testifying against appellant.
The actual assignment of error number four, as noted above, states:
 THE COURT ERRED IN REFUSING TO ALLOW THE DEFENSE TO IMPEACH THE STATE'S WITNESS BY USE OF EVIDENCE OF A PENDING INDICTMENT AND PROBATION STATUS TO SHOW BIAS AND INTEREST IN THE CASE.
The trial court allowed inquiry about Mr. Wilson's being on probation and about his illegal conduct involving other assaults. The trial court simply limited inquiry about a separate indictment involving Mr. Wilson and one Dana Howard. No evidence indicated that appellant was aware of the Dana Howard incident, so appellant's conduct was not in any way affected by the facts of the Howard incident.
Further, indictment in and of itself does not constitute proof of the facts which are alleged by the prosecution to be a basis for the indictment. Indictment is based upon a probable cause finding, not proof beyond a reasonable doubt.
In short, Keith Wilson's motive to paint himself as being as innocent as possible was demonstrated. However, that motive does not mean that appellant was acting in self-defense when he shot Mr. Wilson. The jury had the information which was relevant to evaluate Wilson's testimony, but was properly protected from improper inquiry about a criminal case which was merely charged, not proved.
The fourth assignment of error is overruled.
In the first assignment of error, counsel asserts that the trial court erred in failing to charge the jury on aggravated assault, an offense of inferior degree to felonious assault. Aggravated assault is defined in R.C. 2903.12(A). The statute reads:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
No evidence demonstrated the existence of the mitigating conditions which distinguishes aggravated assault from felonious assault namely, the existence of sudden passion or sudden fit of rage. Keith Wilson claimed a cold-blooded shooting. Appellant claimed a shooting out of fear of further harm to Mr. Boehner. No one claimed rage or passion.
Since no evidence demonstrated passion or rage, the trial court did not need to provide an alternative charge to the jury which could distract the jury from its primary duty to determine if the shooting was justified by the defense of another or was not so justified.
The first assignment of error is overruled.
Finally, by his third assignment of error, counsel asserts that appellant was denied effective assistance of counsel because his trial counsel did not insist on an instruction of law to the jury in accord with Evid.R. 404(B). Evid.R. 404(B) reads:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The testimony about the prior altercation between appellant and Keith Wilson was offered to demonstrate why Wilson stopped and assaulted Carl Boehner. The testimony was not offered as the basis for an argument that appellant shot at Mr. Wilson before appellant shot at him again. Indeed, appellant acknowledged shooting Wilson.
Because the testimony about the prior confrontation included a claim that appellant fired shots at a car in which Mr. Wilson was driving away, the testimony did raise a suggestion that, since appellant shot for no good reason, before so he might have shot with justification this time too. As a result, a charge clarifying the scope of the use of the testimony by the jury would have been appropriate or even helpful. However, in this case, the failure to ask for such a limiting instruction did not render counsel's assistance as ineffective under the rigid standards of Strickland v. Washington (1984), 466 U.S. 668.
The third assignment of error is overruled.
All four assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
BOWMAN and DESHLER, JJ., concur.